IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff-Respondent,

 vs.                                                   CIVIL NO. 09-88 JC/LFG
                                                           CRIM. NO. 05-2458 JEC

JULIO CESAR VILLARUEL,

       Defendant-Movant.

**MAGISTRATE JUDGE'S FINDINGS
AND RECOMMENDED DISPOSITION**[1]

       1.       This is a proceeding on a Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255.  Defendant-Movant Julio Cesar Villaruel ("Villaruel") attacks the judgment and sentence entered by the United States District Court for the District of New Mexico in United States v. Villaruel, No. CR 05-2458 JEC.  Villaruel is represented by counsel in this proceeding.

       2.       On March 9, 2009, the government filed a response with attachments. [Doc. 6.] No further pleadings were filed.

       3.       The Court determines that the files and records in this case conclusively show that Villaruel is entitled to no relief.  Thus, no evidentiary hearing is necessary.  United States v. Galloway, 56 F.3d 1239, 1240 n. 1 (10th Cir. 1995) (quoting § 2255)).

---

[1] **Within ten (10) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommendations.  A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the findings and recommendations.  If no objections are filed, no appellate review will be allowed.**

## Background

4.     On October 21, 2005, a criminal complaint was filed against Villaruel and a co-defendant.  On November 9, 2005, a federal grand jury returned a 13-count indictment against twelve individuals including Villaruel.  The indictment consisted of Count 1, conspiracy, Count 2, maintaining a place for distribution of heroin, and Counts 3-13, possession and distribution of quantities of heroin, and aiding and abetting. [CR Doc. 2.][2] Villaruel was charged with conspiracy (Count I) and distribution of less than 100 grams of heroin (Count 4). [Doc. 6, Affidavit of James Baiamonte, ¶ 3.]

5.     On December 2, 2005, a federal grand jury returned a superseding indictment adding three defendants. [CR Doc. 52.] On August 8, 2006, a federal grand jury returned a second superseding indictment that subsumed the two earlier indictments and added counts to include maintaining a place for distribution of heroin near a school, maintaining a place to store heroin near a playground, and additional counts of distribution of heroin near a school or playground. [CR Doc. 162.]

6.     On May 25, 2007, an arrest warrant was returned for Villaruel. [CR Doc. 320.] He was arrested in the District of Nevada.  On June 25, 2007, Attorney James Baiamonte was appointed to represent Villaruel. [CR Doc. 332.]

7.     On August 27, 2007, the United States made a written plea offer to Villaruel. [Doc. 6, p. 2.]

8.     Baiamonte stated that after reviewing over 4,000 pertinent intercepted calls and several hundred pages of discovery, he met with Villaruel on October 26, 2007, to discuss the case

---

[2]Further references herein to documents in United States v. Villaruel, CR 05-2458 JEC will be in the format, "CR Doc. __."  References to documents filed in Civ. 09-88 JEC/LFG, the civil action under Section 2255, will be referred to simply as "Doc. __."

and Villaruel's options, which included "the safety valve" debrief. Villaruel stated he was not interested in the plea offer and wished to proceed to trial. On November 5, 2007, counsel again met with Villaruel to confirm his desire to proceed to trial. [Doc. 6, Baiamonte Aff. at ¶ 5.] On November 7, 2007, Baiamonte sent a letter to counsel for the government indicating that Villaruel intended to proceed to trial and that he was not interested in the plea offer. [Doc. 6, Ex. A.]

9. On November 14, 2007, Baiamonte met with Villaruel to prepare for trial. Baiamonte became concerned that another inmate who was assisting Villaruel was creating problems between Baiamonte and Villaruel. [Doc. 6, Baiamonte Aff. at ¶ 6.] Villaruel refused to give Baiamonte his shirt, pant and shoe sizes so that his attorney could provide him with clothing for the trial. Villaruel indicated he intended to appear naked in Court and that he would become disruptive during the trial in an attempt to cause a mistrial. When Baiamonte advised Villaruel that such tactics would not have the desired effect, Villaruel indicated he wanted new counsel. [Doc. 6, Baiamonte Aff. at ¶ 6.]

10. On November 19, 2007, Baiamonte wrote to the Court to explain that Villaruel might seek a new attorney either in the near future or at trial, and that Baiamonte did not want the issue to arise without warning to the Court. [Doc. 6, Ex. B.]

11. In Baiamonte's affidavit, he states that between December 2007 and February 2008, he communicated with Villaruel by telephone at least six times. On March 7, 2008, Baiamonte met with Villaruel to discuss a recent United States Supreme Court decision and its impact regarding conspiracy liability and the disclosure of the name of a confidential informant. Baiamonte utilized the services of a Spanish-language interpreter on that occasion to ensure that Villaruel understood the legal issues. Villaruel insisted that the confidential informant be identified. Baiamonte believed

3

that Villaruel sought the information in order to threaten or otherwise influence the informant. Villaruel did not deny that this was his motive. [Doc. 6, Baiamonte Aff. at ¶ 8.]

12. On March 10, 2008, Villaruel corresponded with Baiamonte, who responded on March 17, 2008. Baiamonte stated that he emphasized to Villaruel that counsel was not suggesting Villaruel take the plea offer. Baiamonte again reviewed conspiracy liability with Villaruel and inquired about Villaruel's motives in requesting the identity of the confidential informant.

13. On March 26, 2008, Villaruel, while still represented by Baiamonte, filed a *pro se* motion to compel the government to disclose the identity of the confidential informant. [CR Doc. 393.]

14. In a letter to the Court, dated March 27, 2008, Villaruel stated that Baiamonte was working under a conflict of interest and not representing his best interests. Villaruel argued that Baiamonte had been careless, refused to file a motion to dismiss the indictment based on an alleged speedy trial violation, and refused to file a motion for a James hearing or for disclosure of the informant. Villaruel requested that the Court appoint different counsel "or in the alternative to allow [Villaruel] to plea [sic] guilty to the original plea agreement offered by the United States on August 27, 2007." [Doc. 6, Ex. C.]

15. At a hearing on April 2, 2008, Villaruel indicated to the Court that he was willing to accept a plea offer before his scheduled trial. He also argued that he was not being represented fairly. The Court denied his request that new counsel be appointed; a plea hearing was scheduled. [CR Doc. 396, Clerk's Minutes.]

16. On April 2, 2008, Villaruel's plea hearing was held before a United States Magistrate Judge with Villaruel's written consent. [CR Doc. 397, Clerk's Minutes.] Villaruel was represented

by Baiamonte at the plea hearing, and the services of a Spanish-language interpreter were utilized during the hearing. [CR Doc. 419, transcript of plea hearing.]

17.  Villaruel testified at the plea hearing that he was 21 years old and had a high school education. Villaruel further testified that he had had enough time to discuss the charges against him with his attorney and that he was satisfied with Baiamonte's representation. [CR Doc. 419, p. 4.] Villaruel's written Plea Agreement, signed by Villaruel, was discussed during the plea hearing. Villaruel testified that he had had enough time to read and review the Plea Agreement in Spanish with his attorney before he signed it. He understood the terms of the Plea Agreement and stated that no promises were made to him other than what was contained in the Plea Agreement. No one forced Villaruel to enter a plea of guilty. He voluntarily plead guilty because he was, in fact, guilty. [Id., p. 5.]

18.  At the plea hearing, the Court asked Villaruel if he had discussed with his attorney the maximum penalty the Court could impose, which could include "a period of imprisonment of not less than ten years nor more than life . . . ." Villaruel responded: "Yes." [Id., p. 6.] By pleading guilty to Count I, Count 4 was to be dismissed. [Id.]

19.  At the end of the plea hearing, Baiamonte stated:

> What I've told my client is that a Presentence Report is anticipated and he is required to cooperate, of course, in the preparation of the Presentence Report. We think he may be safety valve eligible, which will take him below the mandatory minimum of ten years. I've also informed him according to my calculations – and this is just an estimate; it's not binding on Judge Conway – but according to my rough calculations he's probably going to end up at a final adjusted level of 27. It may be better than that. But he knows that final decision will be Judge Conway's.

[Id., at pp. 7-8.] Villaruel then plead guilty. [Id., p. 9.] Villaruel again was advised that a Presentence Report ("PSR") was to be prepared and that he could file objections or corrections to the PSR.

20. The Plea Agreement, filed April 2, 2008, expressly provided that Villaruel understood that the Court could impose a period of imprisonment for not less than ten years nor more than life. [CR Doc. 399, p. 2.] The Plea Agreement further specified, in writing, that Villaruel might be eligible for the safety valve provisions set forth at 18 U.S.C. § 3553(f)(1-5) and U.S.S.G. § 5C1.2. The Plea Agreement stated that if Villaruel "establish[ed] eligibility for each of the elements in § 3553(f)(1-5), the Defendant would be entitled to a reduction of two levels from the based offense level as calculated . . . , and the sentence imposed could be less than the statutory minimum sentence described above." [Id., p. 3.]

> This reduction depends on, among other requirements of § 3553(f), the Defendant truthfully providing to the Government, before sentencing, all information and evidence concerning the offenses that were part of the same course of conduct underlying this agreement. Additionally, this reduction depends on Defendant having not more than one criminal history point as determined under the sentencing guidelines.

[Id.] As part of the Plea Agreement, Villaruel stipulated, in part, that he was a minor participant in the criminal activity underlying the agreement. He also demonstrated a recognition and affirmative acceptance of personal responsibility for the criminal conduct. Villaruel further stipulated that he recognized the Plea Agreement already conferred a benefit on him. Finally, the Plea Agreement stated that there were no representations or promises from anyone as to what sentence the Court would impose. [CR Doc. 399.] On page 10 of the Agreement, Villaruel signed under the line stating he had read the Agreement and carefully reviewed "every part of it with my attorney. I understand the agreement and voluntarily sign it." [Id., p. 10.]

21. In an April 9, 2008 telephone conversation, Baiamonte discussed with Villaruel the importance of the interview for preparation of the PSR, as well as the possibility of his entitlement to the safety valve reduction. [Doc. 6, Baiamonte Aff. at ¶ 13.] According to Baiamonte's affidavit, Villaruel indicated he was not interested in discussing his criminal involvement with law enforcement. [Id.]

22. On April 13, 2008, the PSR interview was conducted. Baiamonte was present during the interview. Villaruel resisted providing information for the PSR. [Id., ¶ 14.]

23. The PSR was disclosed on or about July 3, 2008. [Doc. 6, p. 3.] The safety valve provision is discussed on page 7 of the PSR, which states that "in accordance with U.S.S.G. § 5C1.2, the defendant may be eligible for the safety valve provision set forth at 18 U.S.C. § 3553(f). If eligible, the defendant would be entitled to a reduction of two levels from the base offense level as calculated under the sentencing guidelines." [Doc. 1, Exhibit, PSR, p. 7.] Under the "base offense level" paragraph, the PSR states: "The probation office has determined the defendant does not meet the criteria of U.S.S.G. § 5C1.2, as according to the Government attorney, the defendant has not provided all information and evidence he has concerning the instant offense. Therefore, a two-level reduction is not warranted at this time." [Doc. 1, PSR, p. 35, ¶ 124.]

24. On July 3, 2008, Baiamonte met with Villaruel to discuss the contents of the PSR. Counsel averred that each paragraph of the PSR was reviewed with Villaruel and the Villaruel only objected to the time frame of his involvement in the conspiracy. [Doc. 6, Baiamonte Aff., ¶ 15.]

25. On July 8, 2008, Baiamonte filed a Sentencing Memorandum on behalf of Villaruel, noting his objection regarding the time frame of his involvement in the conspiracy. [CR Doc. 405.] The Sentencing Memorandum indicates, in part, that a Spanish-speaking interpreter was retained so that the entire PSR was read to Villaruel in Spanish. Villaruel raised only one objection to the

PSR, that being as to ¶ 118 regarding the time frame of the conspiracy. [Id., p. 1.] Villaruel requested a reasonable sentence under 8 [sic] U.S.C. § 3553(a) through (f) and noted that several co-defendants were sentenced to less than ten years incarceration. Villaruel asked for a sentence to correspond to the sentence of the least amount, i.e., for 33 months.[3] [Id., p. 2.]

26. On August 13, 2008, the Court held a sentencing hearing. [CR Doc. 409.] Villaruel appeared with counsel, and a Spanish-language interpreter was provided. The Court inquired whether Villaruel had an opportunity to review the PSR with counsel. Baiamonte stated that the PSR had been reviewed with Villaruel in Villaruel's native language of Spanish. "It has been done and reviewed entirely." The Court then asked if there was anything Baiamonte wished to say on behalf of Villaruel before the Court imposed sentence. Baiamonte responded that there was nothing other than the submissions included in his Sentencing Memorandum. [CR Doc. 413, p. 2, Sentencing Transcript.] The Court asked Villaruel whether he wished to say anything before the Court imposed sentence. Villaruel apologized to the Court and the United States and asked for another chance. [Id.] The Court sentenced Villaruel to a mandatory minimum term of 120 months. [Id., p. 3.] Baiamonte asked the Court to grant his client's request that he be incarcerated near Sacramento, CA. [Id., p. 4.]

27. In his § 2255 Motion, Villaruel raises a single claim: ineffective assistance of counsel due to Baiamonte's failure to request a safety valve debrief in order to allow Villaruel to receive a sentence of incarceration of less than the ten-year mandatory minimum. [Doc. 1, p. 4.]

28. Villaruel attached an affidavit statement to his § 2255 petition, in which he states Baiamonte "had minimal contact with me during the pendency of my case." [Doc. 1, Villaruel

---

[3]Apparently, Baiamonte was requesting the same sentence for Villareal that was imposed on a co-defendant. Even if it could be said that Baiamonte miscalculated the possible guideline range, a "miscalculation or erroneous sentence estimation by a defense counsel is not a constitutionally defective performance rising to the level of ineffective assistance of counsel." United States v. Gordon, 4 F.3d 1567, 1570-71 (10th Cir. 1993), *cert. denied*, 510 U.S. 1184 (1994).

Affidavit, ¶ 3.] Baiamonte informed Villaruel shortly before the trial date that if he plead guilty, his sentence would be approximately 33 months. According to Villaruel, Baiamonte never explained to him that the ten-year mandatory minimum would be imposed at sentencing unless Villaruel underwent a safety valve debrief. Prior to representation by federal habeas counsel, Villaruel states he never had heard of a safety valve debrief or that he "had to do anything to receive the sentence that Mr. Baiamonte had told me would be forthcoming." [Id.] Villaruel further stated that he never knowingly and willfully relinquished his right to a safety valve reduction at sentencing because of any unwillingness or inability to truthfully debrief his knowledge of the offense conducted to the government. If his § 2255 petition is granted, Villaruel asserts that he will undergo a safety valve debrief and truthfully disclose his knowledge of the criminal conduct so that he can receive a sentence lower than the mandatory minimum that was imposed. [Id., ¶ 4.]

## Discussion

29.     In reviewing a § 2255 petition, the Court presumes the proceedings leading to the conviction were correct. Klein v. United States, 880 F.2d 250, 253 (10th Cir. 1989). "[R]elief under § 2255 is warranted only for jurisdictional or constitutional claims or errors that reveal 'a fundamental defect which inherently results in a complete miscarriage of justice.'" United States v. Addonizio, 442 U.S. 178, 185 (1979) (internal quotation omitted).

30.     To succeed on a claim of ineffective assistance, Villaruel must make a two-pronged showing: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. Strickland v. Washington, 466 U.S. 668, 687 (1984); Williamson v. Ward, 110 F.3d 1508, 1514 (10th Cir. 1997). A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

31. In applying the Strickland test, the Court "recognize[s] that counsel is strongly presumed to have rendered adequate assistance . . . ." Bullock v. Carver, 297 F.3d 1036, 1044 (10th Cir.) (*quoting* Strickland, 466 U.S. at 690), *cert. denied*, 537 U.S. 1093 (2002). Thus, to prove deficient performance, Villaruel must overcome the presumption that counsel's conduct was constitutionally effective. Duvall v. Reynolds, 139 F.3d 768, 777 (10th Cir. 1998). Scrutiny of counsel's performance must be highly deferential and must avoid the distorting effects of hindsight. Miles v. Dorsey, 61 F.3d 1459, 1474 (10th Cir. 1995), *cert. denied*, 516 U.S. 1062 (1996).

32. The Court may address the performance and prejudice components in any order and need not address both if the petitioner fails to make the requisite showing for one of the elements. Strickland, 466 U.S. at 697. The movant bears the burden to expose "acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Anderson v. Attorney General of Kansas, 425 F.3d 853, 859 (10th Cir. 2005) (*quoting* Strickland, 466 U.S. at 690).

33. In arguing that he received ineffective assistance of counsel, Villaruel alleges that his attorney failed to request a safety valve debrief so as to allow Villaruel less than the otherwise applicable ten year mandatory minimum that was imposed. Villaruel further asserts that he pled guilty based on trial counsel's representations that Villaruel was eligible for a sentence below the ten-year mandatory minimum. Villaruel claims that at an evidentiary hearing, he would demonstrate he never was informed he had a right to a safety valve debrief, and that if he had been so informed, he would have complied with the requirements under 18 U.S.C. § 3553(f)(5), thereby entitling him to a guideline range between 46-57 months. [Doc. 1, p. 4.]

34. Safety valve relief refers to statutory and sentencing guideline authority for the sentencing court to sentence beneath a statutory mandatory minimum sentence. 18 U.S.C. § 3553(f);

USSG § 5C1.2. If a defendant meets all of the prerequisites of § 5C1.2, the language of § 2D1.1(b)(6) permits a two-level decrease in offense level. *See* United States v. Cousins, 455 F.3d 1116, 1124 (10th Cir.) (safety valve permits a court to exempt a defendant from statutory mandatory minimum sentence if all five conditions in 18 U.S.C. § 3553(f)(1-5) are satisfied), *cert. denied*, 549 U.S. 866 (2006). Here, it was undisputed that Villaruel met four of the five prerequisites (*e.g.,* criminal history category of I, no weapon used, no injury incurred, did not take leadership or supervisory role, etc.). The disputed prerequisite in this case is as follows:

> not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

*See* United States v. Collins, 97 F. App'x 818, 831 (10th Cir. May 5, 2004) (*quoting* USSG § 5C1.2(a)(5)).

35.    Here, the critical inquiry is whether Villaruel was informed of his right to truthfully provide the above-described information and evidence to the government before his sentencing hearing. If this question only involved Villaruel's word that he was not informed versus Baiamonte's word that he provided this information to Villaruel, an evidentiary hearing would be necessary to resolve the conflicting assertions. *See* United States v. Garrett, 402 F.3d 1262, 1266-67 (10th Cir. 2005) (instructing that a factual dispute in the realm of § 2255 triggers the need for an evidentiary hearing). Based on the files, records and transcript testimony, such is not the case here.

36.    There is ample evidence in the record regarding communications with Villaruel about safety valve eligibility, including the written Plea Agreement, the transcript of the plea hearing, and

the PSR. Villaruel cannot credibly claim he was uninformed of the safety valve provision or eligibility for it, nor does he convince the Court that his counsel made no attempt to investigate his eligibility for the safety valve reduction. This is not a case where it was determined that Villaruel already met all of the eligibility requirements for the safety valve reduction. Instead, it was consistently conveyed to Villaruel that he *might* receive the safety valve reduction if he satisfied all of the requirements. The record demonstrates he did not qualify for the safety valve.

37. The April 2, 2008 Plea Agreement states that Villaruel "may be eligible" for the safety valve provisions but that he must establish eligibility as to each of the elements set out under § 3553(f)(-5). Only then would Villaruel be entitled to a two level reduction, which could result in a sentence of less than the statutory minimum. [CR Doc. 399, p. 3.] The Plea Agreement further specifies that the reduction "depends on," among other things, Villaruel "truthfully providing to the Government, before sentencing, all information and evidence concerning the offenses that were part of the same course of conduct underlying this agreement." [Id.]

38. This Plea Agreement was read to Villaruel in his native language. [CR Doc. 397, pp. 4-5.] He testified that he had enough time to read and review the Agreement in Spanish with his attorney before he signed it. [Id.] Villaruel further testified at the plea hearing that he understood the terms of the Plea Agreement and that no one had made promises to him other than those contained in the Agreement. [Id., p. 5.] Villaruel also testified that he understood he could be sentenced to a period of incarceration of not less than ten years. [Id., p. 6.] Villaruel signed the Plea Agreement which states above the signature line that Villaruel has "read this agreement and carefully reviewed every part of it with my attorney. I understand the agreement and voluntarily sign it." [CR Doc. 399, p. 10.] Thus, even if true that Baiamonte "never explained to [Villaruel] that [he] had a ten-year mandatory minimum that would be imposed at sentencing but for [him]

12

undergoing a 'safety valve' debrief," the Plea Agreement and plea hearing transcript make clear that all of this information was provided to Villaruel. [*See* Villaruel Aff. at ¶ 3.]

39.     Villaruel's affidavit statement that he had never heard of a safety valve debrief before speaking to federal habeas counsel, or that he had to do anything to receive a lesser sentence, is contradicted by the record.  Clearly, Villaruel had heard of the safety valve debrief and that he was required to meet eligibility requirements before he would be entitled to the safety valve reduction. Moreover, near the end of the plea hearing, Baiamonte again stated that "we think he may be safety valve eligible, which will take him below the mandatory minimum of ten years." [CR Doc. 397, p. 7.]

40.     Nothing in Villaruel's affidavit disputes the contents of the Plea Agreement or the testimony at the Plea Hearing.  Villaruel does not deny having read or understood the Plea Agreement and does not deny that the Plea Agreement specifically requires that he qualify for the safety valve by truthfully providing information to the government.

41.     In addition, the PSR refers to safety valve eligibility. [Doc. 1, Attachment.] The document again provides that Villaruel might be eligible for the safety valve provision. [PSR, p. 7.] However, in computing Villaruel's offense level, the PSR notes that the probation office determined that Villaruel "does not meet the criteria of U.S.S.G. § 5C1.2, as according to the Government attorney, the defendant has not provided all information and evidence he has concerning the instant offense.  Therefore, a two-level reduction is not warranted at this time." [Id., p. 35.]

42.     Once again, Villaruel was informed that he needed to participate in the interview with probation for purposes of providing information for the PSR.  He was also informed that he would receive a copy of the PSR that he could review and to which he could file objections. [CR Doc. 397, p. 9.]  Villaruel received a copy of the PSR and had it read to him in its entirety in Spanish. [CR

Doc. 413, p. 2.] The only objection raised by Villaruel related to an unrelated portion of the PSR. After being sentenced to a term of incarceration of ten years, Villaruel did not raise any objections at the sentencing hearing.

43. In his affidavit, Villaruel does not dispute having received the PSR, having reviewed it in Spanish, and having had an opportunity to object to the portion of the PSR that stated he did not satisfy eligibility requirements for the safety valve.

44. In his affidavit, Villaruel states that his attorney, Baiamonte had minimal contact with him during the pendency of his case. [Doc. 1, Villaruel Aff, ¶ 3.] However, Villaruel did not provide any evidence to dispute Baiamonte's affidavit testimony to the contrary regarding multiple meetings with Villaruel and many telephone conversations as well. [*See* discussion *supra*.]

45. Similarly, Villaruel presents no evidence to challenge Baiamonte's affidavit testimony that he attended the presentence report review with Villaruel on April 13, 2008, or that Villaruel resisted providing information for the PSR. Villaruel did not present evidence to contradict Villaruel's affidavit testimony that Baiamonte met with Villaruel on July 3, 2008 to discuss the contents of the PSR and that each paragraph was reviewed at that time.

46. Finally, while Villaruel asserts that he never had a conversation with Baiamonte during which he indicated he would not truthfully undergo a safety valve debrief, he did not dispute that Baiamonte met with Villaruel on July 25, 2008 and that Villaruel again declined to speak to law enforcement officials.

47. Other than self-serving statements that Villaruel is now willing to undergo the safety valve debrief (three-four years after the underlying criminal conduct), he presents no evidence that he had helpful information to provide to the government. *See* United States v. Contreras-Castellanos, 191 F. App'x 773, at *3 (Aug. 14, 2006) (observing that even if trial counsel's alleged

failure to inform his client of the safety valve provision was deficient, the petitioner did not show how he was prejudiced by the lack of opportunity to qualify for the reduction; he did not explain what information he would have disclosed in order to satisfy the provision).

48.     Based on the record, the Court concludes that Villaruel did not overcome the strong presumption that his attorney's conduct was reasonable. Indeed, it was not the attorney's conduct that cost Villaruel a chance at relief under the safety valve provision. Instead, the evidence shows that Villaruel failed to demonstrate he satisfied all the eligibility requirements even though he was well informed of the requirements he had to meet, whether by his attorney, the Court, or the express language of the Plea Agreement.

49.     Moreover, Villaruel did not demonstrate that a reasonable probability exists that, but for counsel's unprofessional errors, the result of the proceedings would have been different. In other words, he provides no evidence to show prejudice or that had he cooperated with the Government, he would have received the safety valve reduction. No one ever promised Villaruel that he would be eligible for the safety valve. He was consistently informed that he had to meet eligibility requirements. His affidavit statement, standing alone, does not demonstrate he would have satisfied the eligibility requirements.

50.     In sum, there was no showing of ineffective assistance of counsel or that a complete miscarriage of justice occurred.

**Recommended Disposition**

That Villaruel's Motion to Vacate, Set Aside, or Correct Sentence [Doc. 1] be denied and the case be dismissed, with prejudice.

_____
Lorenzo F. Garcia
Chief United States Magistrate Judge